UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 5: 19-172-DCR |
| Plaintiff/Respondent, | ) | and |
| | ) | Civil Action No. 5: 22-190-DCR |
| V. | ) | |
| | ) | |
| DANIEL SEGURA-CORRO, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

A federal jury found Defendant Daniel Segura-Corro guilty of two counts of conspiring to distribute cocaine in violation of 21 U.S.C. § 846; one count of possessing with intent to distribute a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1); and one count of conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h).  [Record No. 72]  He was later sentenced to 168 months of imprisonment.  [Record No. 95]  Segura-Corro appealed his conviction and sentence, but the United States Court of Appeals for the Sixth Circuit rejected his arguments.  *United States v. Segura-Corro*, No. 21-5109, 2022 WL 985818 (6th Cir. Apr. 1, 2022).  He has now filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  [Record No. 186]

Segura-Corro makes two claims in support of his motion.  First, he contends that he was denied effective assistance of counsel when his attorney pressured him to reject the United States' proffered plea agreements and proceed to trial.  [Record No. 189, pp. 6-17]  Next, Segura-Corro asserts that the failure to provide him with an interpreter deprived him of his rights to confront the witnesses against him, be present at trial, participate in his defense, and

- 1 -

generally receive a fair trial.  [*Id.* at pp. 18-23]  The United States asserts in response that Segura-Corro's attorney provided adequate assistance by "fully explain[ing] the penalties and possible sentence exposure of proceeding to trial."  [Record No. 195, p. 5]  Moreover, the government contends that Segura-Corro cannot show that he was prejudiced by any allegedly deficient performance, as the defendant repeatedly emphasized that he was innocent and refused to accept the government's plea agreement.  [*Id.* at pp. 5-7]

With respect to Segura-Corro's second claim, the government states that the two translators who actively assisted him throughout the defendant's trial ensured that he could effectively participate in trial proceedings.  [*Id.* at pp. 7-8]  But Segura-Corro argues in his reply that the government has failed to establish that his claims are meritless.  As a result, he contends that the Court should schedule an evidentiary hearing to "make credibility determinations considering the competing statements of [the defendant] and his former counsel."  [Record No. 196, pp. 2-3]

Having considered the parties' filings and corresponding arguments, the undersigned concludes that Segura-Corro has failed to establish that he was deprived of his rights to effective assistance of counsel or to a fair trial.  As a result, the motion for collateral relief will be denied.

## I.  Background

An October 17, 2019, a federal grand jury returned an indictment charging Segura-Corro with two counts of conspiring to distribute a controlled substance in violation of 21 U.S.C. § 846, with one count involving 5 kilograms (Count 1), and a second count involving 500 grams of a mixture or substance containing a detectable amount of cocaine (Count 2).  [Record No. 35, pp. 1-2]  The indictment also charged Segura-Corro with one count of

possessing with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1), and one count of conspiring to commit money laundering in violation of 21 U.S.C. § 1956(h).  [*Id.* at pp. 3-4]  The Court provided a certified Spanish interpreter to assist the defendant during his arraignment and for all future proceedings.  [Record No. 14]

Segura-Corro originally retained Joe Jarrell to represent him, but Elizabeth Hughes and James Inman entered appearances as retained counsel on January 17, 2020, after Jarrell withdrew from the case.  [Record Nos. 12, 25, 32, 33, 34]  Inman has provided an affidavit in which he describes the work that he and his former partner, Elizabeth Hughes, provided on Segura-Corro's behalf.  [Record No. 195-1]  Inman met with Segura-Corro several times in preparation for trial and has attached copies of notes that he took during their meetings.  The contemporaneous records reflect that three meetings occurred in 2020 and six in 2021.  [*Id.* at pp. 8-20]  Inman attests that during two of these meetings he and Hughes advised Segura-Corro of a plea offer received from the government.  [*Id.* at ¶¶ 22-24]  Inman states that the defendant rejected the offer on both occasions, explaining that he chose to go to trial because he "believed he was innocent and could not admit guilt."  [*Id.* at ¶ 34]

Further, Hughes spoke in depth with Segura-Corro about the advantages and disadvantages of his decision to go to trial.  [*Id.* at ¶¶ 31, 32]  Inman states that Hughes explained the defendant's likelihood of success at trial, explaining to the defendant that he had "a chance of partial success on some counts he faced and that a jury would have to decide the facts."  [*Id.* at ¶ 32]  Inman attests that neither he nor Hughes ever guaranteed that the defendant would win at trial.  [*Id.* at ¶ 31]

Before Segura-Corro's trial began, the Court asked counsel for the defendant whether the defendant understood the that the government had extended two plea offers to him and whether he appreciated the consequences of his decision to reject those offers in favor of going to trial.  [Record No. 194, pp. 2-3]  Hughes responded that she and Inman presented both plea offers to the defendant and that he elected to go to trial.  [*Id.* at p. 2]  She further explained that the defendant understood that the offenses with which he had been charged carry statutory mandatory minimums, such that one plea offer "required a plea to Count 1, which would have been a ten-year mandatory minimum," and that the second offer "was a plea to Count 2 and Count 5, which would carry a mandatory minimum of five years."  [*Id.* at p. 3]  Hughes reported that she relayed those proposals to the defendant and discussed the implications of rejecting the offers with him, but he nonetheless chose to proceed to trial.  [*Id.* at pp. 2-3]

The Court then discussed the plea agreements with the defendant:

THE COURT:  All right.  And Mr. Segura, were you able to hear what Mr. West and Ms. Hughes were just discussing about plea offers that were extended to you?

DEFENDANT SEGURA-CORRO: Yes, sir.

THE COURT: Were they accurate in their report to the Court?

DEFENDANT SEGURA-CORRO: Yes.

[*Id.* at p. 3]  Two very experienced Spanish interpreters, Luis Roberto Hernandez and Marta Roller, assisted Segura-Corro throughout his trial.  [Record Nos. 62, 64, 67, 70]  As Inman notes, Hernandez and Roller "interpreted [trial] proceedings" and "provided interpreting services during breaks and whenever Mr. Segura needed to communicate with counsel." [Record No. 195-1, ¶ 37]  Inman further explains that Segura-Corro was given a pen and paper to record any notes or questions he had for counsel, and that "each time he had a

question, it was addressed with the assistance of an interpreter." [*Id.* at ¶ 38] Additionally, when only one interpreter was present during the second day of the defendant's trial, the Court reminded the parties to "slow down and . . . be cognizant of the need for the interpreter to listen carefully and interpret correctly." [Record No. 150, p. 9] Both parties and the Court reminded witnesses to slow down for the interpreters' sake on several occasions and asked witnesses to repeat their statements if the interpreters did not hear what was said. [*See* Record Nos. 150, p. 144, 151, pp. 8-9, 16, 88, 136, 147, 165.] The interpreters themselves also notified the Court when they had trouble understanding a witness's statement. [Record Nos. 149, pp. 56-57, 151, pp. 134, 155, 179, 206-07]

A jury found Segura-Corro guilty of both counts of conspiring to distribute cocaine, one count of conspiring to commit money laundering, and one count of possessing a substance containing methamphetamine. [Record No. 72] He was later sentenced to 168 months of imprisonment, followed by 5 years of supervised release. [Record No. 153, pp. 20-21] The defendant filed an appeal following the sentencing hearing, arguing that the evidence was insufficient to support his conviction for conspiracy to commit money laundering and that his sentence was substantively unreasonable. *United States v. Segura-Corro*, 2022 WL 985818, at *1. The Sixth Circuit, however, affirmed the judgment and sentence. *Id.*

## II.  Legal Standard

A federal prisoner may move a court that sentenced him to "vacate, set aside or correct the sentence" under 28 U.S.C. § 2255 upon showing that the sentence was unlawful, that the court lacked jurisdiction, that the sentence was "in excess of the maximum authorized by law," or that the sentence is "otherwise subject to collateral attack." "A motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional

magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI. For the purpose of a § 2255 motion, a defendant claiming ineffective assistance must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

Regarding *Strickland*'s first prong, courts "take care to avoid 'second-guessing'" an attorney's discretion and "strongly presume" that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Lundgren v. Mitchell*, 440 F.3d 754, 769-60 (6th Cir. 2014); *Strickland*, 466 U.S. at 690. To satisfy the second prong, the defendant must demonstrate that counsel's deficient performance would have changed the outcome of the proceeding, considering "the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695-96. And a defendant must establish his claim of ineffective assistance by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

## III.  Discussion

### A.  Ineffective Assistance During the Plea-Bargaining Process

Segura-Corro claims that he was denied the effective assistance of counsel during the plea negotiation stage. [Record No. 189, pp. 6-17] He argues that his attorneys "only met with him a few times," failed to inform him of "the strength of the prosecution's case against [him]," and that they "compelled him to proceed to trial without minimally adequate

preparation, by guaranteeing that they would win his case." [*Id.* at pp. 10 & n.1, 12]  He alleges that, without his attorneys' misleading advice to proceed with trial, he "would have accepted the prosecution's plea offer or simply pleaded guilty for the available sentencing benefits." [*Id.* at p. 14]

The United States contends that Segura-Corro's assertion that counsel failed to adequately inform him are flatly untrue.  [Record No. 195, pp. 4-5]  It explains that attorneys Hughes and Inman met with the defendant to "fully explain[] the penalties and possible sentence exposure of proceeding to trial" and cites Inman's statement in his affidavit that neither he nor Hughes "guarantee[d] any particular outcome in a case."  [*Id.* at pp. 5, 7 (citing Record No. 195-1, ¶ 33)]  Moreover, the government argues that Segura-Corro has failed to show prejudice resulting from his attorneys' alleged failures, as he cannot demonstrate that he would have plead guilty if not for counsel's urging him to proceed with trial.  [*Id.* at pp. 5-6]

A defendant alleging that his counsel's ineffective assistance led him to reject a plea offer must show that, "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."  *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

In *Lafler*, the defendant twice rejected the prosecution's offer to dismiss several charges brought against him and to recommend a sentence of 51 to 85 months.  *Id.*  The defendant expressed a willingness to accept the offer to the trial court, but ultimately rejected after relying on his attorney's advice that the prosecution would be unable to prove that he acted with the

requisite criminal intent. *Id.* at 161. Following trial, the defendant was convicted of all counts and the court sentenced him to 185 to 360 months imprisonment. *Id.* The defendant filed for habeas relief under 28 U.S.C. § 2254, alleging that he suffered prejudice in the form of a higher sentence due to his counsel's ineffective assistance. *Id.* at 162. The trial court granted the defendant's requested relief, and the Sixth Circuit affirmed. *Id.*

The Supreme Court recognized that the Sixth Amendment's right to counsel "extends to the plea-bargaining process" and affirmed the Sixth Circuit's finding that the defendant's attorney "provided deficient performance by informing respondent of 'an incorrect legal rule.'" *Id.* (citing *Missouri v. Frye*, 566 U.S. 134, 144 (2012); *Lafler v. Cooper*, 376 F. App'x 563, 570-71 (2010)). The Court determined that trial counsel's deficient performance caused the defendant to suffer prejudice because the defendant went to trial as a result of counsel's faulty advice, and "received a more severe sentence at trial, one 3 ½ times more severe than he likely would have received by pleading guilty." *Id.* at 166. The court further concluded that the appropriate remedy for Lafler's injury would be to order the State to reoffer its original plea agreement to the defendant, and if the defendant accepts, to submit that agreement to the trial court which can "exercise its discretion in determining whether . . . to resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence from trial undisturbed." *Id.* at 174.

Applying *Lafler*, the Sixth Circuit in *McGowan v. Burt* held that a defendant did not receive ineffective assistance during the plea negotiation process when his attorney gave him a mistaken estimate of his sentence under the sentencing guidelines. 788 F.3d 510, 518 (6th Cir. 2015). The defendant was sentenced pursuant to a guidelines range of 78 to 195 months,

- 8 -

though his attorney had told him during plea negotiations that the minimum sentence range under the guidelines would be 45 to 93 months. *Id.* at 512. The circuit court reversed the district court's grant of relief under § 2254, noting that the attorney's mistake did not meet *Strickland*'s first prong because the attorney and the trial court "warned McGowan the estimate could be erroneous and that it was impossible to say what the actual range would be until after the presentence report was finalized." *Id.* at 516. Because the defendant understood that the predicted range was just an estimate, the fact that the prediction was ultimately erroneous did not amount to counsel's assistance being "'deficient' in a constitutional sense." *Id.*

The circuit court also found that the defendant did not show prejudice resulting from his attorney's mistake because he did not prove that he would have accepted the plea offer if not for his attorney's error. *Id.* at 517. As the court explained, "the record shows that [the defendant's] decision to go to trial was not so much motivated by counsel's error as by McGowan's hope that the jury would believe his testimony and find him not guilty." *Id.*; *see also Smith v. Cook*, 956 F.3d 377, 393 (6th Cir. 2020) (rejecting defendant's claim that he was prejudiced by attorney's failure to inform him of a 27-year plea offer before trial because the defendant did not rebut attorney's statement that the defendant was not interested in the offer and because the lower court gave him multiple opportunities to accept the offer throughout trial).

Moreover, even if the defendant would have accepted the offer, the *McGowan* court found it unlikely that the trial court would have sentenced him in accordance with the agreement, given the large disparity between the sentence proposed in the plea agreement and the sentence that the trial judge imposed. *Id.* at 518. The proposed sentence was "below the low end of the minimum-sentence range" while the "minimum sentence ultimately imposed

- 9 -

[was] at the high end of the actual minimum-sentence range," suggesting that the trial court would have been disinclined to accept the parties' sentencing agreement. *Id.* Because the defendant did not show how his counsel's error was deficient, or how the outcome would have differed without that error, the court rejected his requested relief under both prongs of *Strickland*. *Id.*

In *Johnson v. Genovese*, the Sixth Circuit addressed whether a defendant was prejudiced due to his attorney's alleged failure to adequately advise him during the plea process. 924 F.3d 929, 940 (6th Cir. 2019). The defendant was sentenced to 54 years imprisonment after rejecting a plea deal offering a 20-year sentence. *Id.* at 932. The defendant filed a § 2254 petition challenging his sentence, claiming that the state appellate court failed to recognize the "presumption of prejudice" that applies when a "significant disparity [exists] between the plea offered and the ultimate sentence" received by the defendant. *Id.* at 939-41 (citing *Sawaf v. United States*, 570 F. App'x 544, 548 (6th Cir. 2014)). But the Sixth Circuit rejected the defendant's argument, concluding that he had failed to show prejudice after considering all the evidence against the defendant. *Id.* at 940. Despite the large disparity between the sentence offered in the plea deal and the sentence imposed, the lower court's "factual findings on [the defendant's] equivocal testimony, his assertions of innocence, and his attorney's credited statements" overcame any presumption of prejudice under *Strickland* and, as such, the defendant was not entitled to relief. *Id.*

Here, Segura-Corro has failed to meet either prong of *Strickland*. He has not shown that his attorneys' performance was constitutionally deficient. His attorneys allege, and the record reflects, that he understood the nature of both plea agreements when he chose to reject them in favor of going to trial. [*See* Record Nos. 194, p. 3, 195-1, ¶¶ 18, 22, 25.] Inman and

Hughes met with Segura-Corro several times (always with an interpreter) and that they informed him of both plea agreements from the government. [Record No. 195-1, ¶¶ 14, 18, 21, 22] Counsel told the defendant that under the government's first plea offer Segura-Corro faced a mandatory minimum sentence of 10 years if he pleaded guilty, while under the second offer he was subject to a mandatory minimum sentence of 5 years. [*Id.* at ¶¶ 18, 22] His attorneys also compared the government's proposed plea agreements with his estimated sentence under the guidelines, informing the defendant that he could receive 12-13 years at sentencing if he chose to go to trial. [*Id.* at ¶ 21] The fact that he was ultimately sentenced to 14 years (one year longer than his attorneys' predicted range) does not amount to an error of constitutional magnitude. Like in *McGowan*, Segura-Corro's attorneys advised him that their predictions were just that—predictions—and that the guidelines range they proposed was only an expectation, rather than a guarantee. *See McGowan*, 788 F.3d at 516.

Transcripts from Segura-Corro's trial confirm that his attorneys provided competent advice with respect to the plea offers. [*See* Record No. 194.] Hughes explained during the pretrial hearing the nature of both offers and advised the Court that the defendant was adequately apprised of the terms of each. [*Id.* at pp. 2-3] When the Court asked Segura-Corro whether Hughes truthfully and accurately reported her communications to him regarding the plea offers, he confirmed that she had. [*Id.* at p. 3] Segura-Corro's attorneys' certified statements, several of which are identical to those made in open court, undermine the defendant's claims that he was given inaccurate and misleading information regarding the plea offers.

That said, even if this Court were to accept Segura-Corro's unsubstantiated claims that his trial counsel did not adequately inform him of the government's plea offers, he has not

shown that their alleged failures caused him to suffer prejudice.   First, a defendant's blanket assertions that he would have pleaded guilty if not for his attorney's failures to inform him are insufficient.  *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea [or verdict] solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.").   Rather, looking to "contemporaneous evidence to substantiate [his] expressed preferences," the Court finds that the defendant has made little showing that his communications with his attorney were the actual cause of his decision not to plead guilty.  *See McGowan*, 788 F.3d at 517.   Unlike the defendant's willingness to take a plea offer in *Lafler*, the record does not reflect that Segura-Corro showed any interest in pleading guilty until after he was convicted.   [Record No. 195-1, ¶ 26] Moreover, Inman attests that Segura-Corro chose to go to trial, not because he was dissatisfied with the prosecution's plea offers, but because "he believed he was innocent and could not admit guilt."  [Record No. 195-1, ¶ 34]  Segura-Corro has not presented *any* evidence to rebut this statement.  *Cf. Smith*, 956 F.3d at 393.

But even if the Court believed that the defendant was inclined to accept one of the government's plea offers, he has not shown that the Court would agree to the terms of those offers or that his sentence following a guilty plea would have been less severe.  *See Lafler*, 566 U.S. at 164.   As counsel explains, the first plea offer implicated a mandatory minimum sentence of ten years if Segura-Corro pleaded guilty to Count 1, and the second offer would have required a mandatory minimum sentence of five years if he pleaded guilty to Counts 2 and 5.  [Record No. 194, p. 3]  Following his conviction, Segura-Corro's sentence of 168 months was at the high end of his applicable guidelines range, but the sentence is only one year longer than the 12 to 13-year sentence that his attorneys predicted he the defendant

proceeded to trial and was convicted of the charges.  [*See* Record Nos. 153, p. 20, 195-1, ¶ 18.]  As noted earlier, a disparity of one year is not sufficiently substantial to implicate the presumption of prejudice that applies when the sentence offered in the plea agreement varies widely from the one imposed.  *See Johnson*, 924 F.3d at 939-41.  And even if prejudice could be presumed, the defendant's statements to the undersigned rejecting the plea offers and his failure to rebut Inman's assertions that he maintained his innocence throughout negotiations would rebut that presumption.

### B.  Failure to Provide an Interpreter

Next, Segura-Corro asserts that he was deprived of his rights to effective assistance of counsel, to confront the witnesses against him, to be present during his trial, to participate in his defense, and to a fair trial because the Court allegedly failed to provide a translator at relevant times during the criminal proceedings.  [Record No. 189, pp. 18-23]  While the defendant admits that he was provided with an interpreter throughout trial, he contends that the limited "scope of the services provided by that interpreter did not allow [him] and his counsel to confer during trial."  [*Id.* at p. 20]  He claims that "simply providing a translation of the trial testimony" did not allow him to effectively communicate with his attorneys, which prevented him from the full enjoyment of his trial rights.  [*Id.*]

However, as government explains, "not one, but two translators" actively assisted Segura-Corro throughout trial, citing to statements from his attorney and to trial transcripts. [Record No. 195 at p. 8]  The government further notes that the defendant's claim fails because the he cannot "provide any examples of instances where he was unable to communicate with his counsel or situations where he was unable to provide vital information to counsel during the trial."  [*Id.* at pp. 7-8]

Segura-Corro contends that the Second Circuit's holding in *United States ex rel. Negron v. New York* should control the Court's analysis. 434 F.2d 386 (2d Cir. 1970). In *Negron*, the court held that an indigent defendant from Puerto Rico who did not speak or understand English was deprived of his right to a fair trial under the Fourteenth Amendment when the trial court failed to provide him with an interpreter. *Id.* at p. 389. There, the defendant could not participate in his trial that was conducted entirely in English, save "the spotty instances when the proceedings were conducted in Spanish, or Negron's Spanish words were translated into English, or the English of his lawyer, the trial judge, and the witnesses against him were gratuitously translated for Negron into Spanish." *Id.* at 388. The court held that the "ex post facto brief resumes" of the proceedings that the prosecution's translator only twice provided Negron deprived him of his Fourteenth Amendment right to a fair trial, as they failed to ensure that the defendant could "understand the precise nature of the testimony against him." *Id.* at 389. It further held that "a court, put on notice of a defendant's severe language difficulty, [must] make unmistakably clear to him that he has a right to have a competent translator assist him, at state expense if need be, throughout his trial." *Id.* at 391.

*Negron* is clearly distinguishable from Segura-Corro's case. While, Negron was not provided with *any* interpreters during his trial, Segura-Corro received assistance from "not one, but two translators." [*See* Record Nos. 195, p. 7; *see also* Record Nos. 62, 64, 67, 70.] And the minimal translation provided to Negron differs markedly from Segura-Corro's trial records, which reflect that both translators continuously and actively interpreted throughout trial. [Record Nos. 149, 150, 151]

Additionally, *Negron* involved a constitutional claim, but neither the Supreme Court nor the Sixth Circuit have expressly recognized a right to a court-appointed interpreter. *See*

- 14 -

*Nguyen v. Booker*, 496 F. App'x 502, 506 (6th Cir. 2012).  Instead, the Court Interpreters Act, 28 U.S.C. § 1827, requires that courts provide translation services in all federal criminal proceedings.  Under the Act, a presiding judicial officer "shall utilize the services of [an interpreter] . . . if the presiding judicial officer determines . . . that such party . . . speaks only or primarily a language other than the English language . . . so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness'[s] comprehension of questions and the presentation of such testimony."  28 U.S.C. § 1827(d)(1).  To determine whether the objectives of the Act have been met, a court must consider whether the party needing translation "ha[d] comprehension of the proceedings and . . . [had] the means to communicate effectively with counsel."  *United States v. Rodriguez*, 211 F. App'x 467, 469-70 (6th Cir. 2006) (citation omitted).  If a defendant claims that a court failed to provide adequate interpretation services, the reviewing court should ask "whether such failure made the trial fundamentally unfair."  *United States v. Sanchez*, 928 F.2d 1450 (6th Cir. 1991), *abrogated on other grounds by United States v. Jackson-Randolph*, 282 F.3d 369 (6th Cir. 2002).

The Sixth Circuit addressed a district court's duties under the Act in *United States v. Sanchez*, 928 F.2d at 1455-56.  In that case, a defendant who was tried jointly claimed that his rights under the Act were violated because the trial court required that he share his interpreter with a co-defendant.  *Id.* at 1454.  The court rejected the defendant's argument, recognizing that the Act does not require that "each defendant in this case be provided with a personal interpreter."  *Id.* at 1455.  Instead, it held that, "as long as the purposes of the Act have been met, the appropriate use of interpreters in the courtroom is a matter within the sound discretion of the district court."  *Id.* (collecting cases).  Because the court provided "ample opportunity

for each defendant to confer with counsel" throughout trial and "neither defendant made any objection to [the] arrangement during trial,"  the court rejected the defendant's claim of inadequate translation.  *Id.* (citing *Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir. 1989) ("Only if the defendant makes any difficulty with the interpreter known to the court can the judge take corrective measures. To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse.")).

Here, this court's actions met the objectives of the Court Interpreters Act by ensuring that Segura-Corro's trial was fundamentally fair.  As mentioned above, Segura-Corro was assisted by two interpreters for three out of the four days of his trial.  And on the day that only one interpreter was provided, the court cautioned the parties to speak slowly to ensure that the interpreter could clearly understand what was being said.  [*See* Record No. 150, p. 9.]  The record also reflects that the defendant's interpreters actively engaged in the proceedings, as they notified the Court several times that they needed witnesses to slow down or repeat a statement.  [Record Nos. 149, pp. 56-57, 151, pp. 134, 155, 179, 206, 207]  Inman notes that each of Segura-Corro's questions for counsel were addressed with the interpreters' assistance and the court provided sufficient breaks to ensure that the defendant could communicate effectively with counsel.  [Record No. 195-1, ¶¶ 37-38]; *see Sanchez*, 928 F.2d at 1455.

Moreover, to the extent Segura-Corro felt that the interpretation services provided him were inadequate, he could have taken one of the many opportunities before and during his trial to make his objections known.  Segura-Corro was provided with a pen and paper to record any questions for counsel, and there is no indication that he notified either his attorneys or the interpreters of any difficulty understanding trial proceedings.  [Record No. 195-1, ¶ 37]  The

- 16 -

defendant's failure to raise any issue during trial prevented any remedial measures from being taken contemporaneously, if such had been necessary. Based on the record of this proceeding, Segura-Corro has not basis to claim that he was deprived of any rights under the Court Interpreters Act. *See Valladares*, 871 F.2d at 1566.

### IV.  Evidentiary Hearing

Segura-Corro asks in his reply brief for an evidentiary hearing on both claims. [Record No. 196] And Section 2255 provides that, "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." The Sixth Circuit has recognized that when a movant alleges facts that entitle him to relief, "a district court may only forego a hearing where 'the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (citation omitted).

Here, Segura-Corro is not entitled to an evidentiary hearing because both of his claims are contradicted by the record. With respect to his first claim, Segura-Corro asserts that the allegations in his motion and in his attorney's affidavit establish a factual dispute regarding whether counsel provided sufficient assistance, and that the Court should not determine which of the "dueling affidavits" is more credible without first holding an evidentiary hearing. [*Id.* at p. 4] But the government's position does not rest merely on Inman's affidavit. Rather, the government supports its claim that Segura-Corro understood the nature of the plea offers and the consequences of proceeding to trial with evidence from the record. [Record No. 195, p. 6]

- 17 -

As explained previously, Hughes advised the Court that she met with the defendant at least twice to explain the terms of both plea offers, and Segura-Corro did not object to her statements when asked if they were true. [*Id.* at p. 3]  Parties' representations in open court are entitled to "a strong presumption of verity" and constitute strong evidence refuting the defendant's claim. *See United States v. Torres*, No. 6:17-CR-40, 2022 WL 983146, at *8 (E.D. Ky. Mar. 30, 2022) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74) (1977)) (declining to hold evidentiary hearing when statement that counsel did not communicate plea offer was contradicted by the record of defendant's sentencing hearing); *Woolsey v. United States*, 794 F. App'x 469, 475 (6th Cir. 2019) (rejecting request for evidentiary hearing on § 2255 motion claiming that prosecution offered multiple conflicting plea offers because hearing transcript showed that prosecution made only one plea offer).  Moreover, the defendant's failure to object to his counsel's performance at any point during the trial or sentencing hearing further undermines his claim that the parties' conflicting affidavits are the only evidence before the Court.  [*See* Record Nos. 149, 150, 151, 152, 153.]  The parties' representations in open court and the defendant's silence make an evidentiary hearing unnecessary.  *See Torres*, 2022 WL 983146, at *9 (noting that the defendant's "notable silence during the sentencing hearing" made an evidentiary hearing regarding his ineffective assistance of counsel claim unnecessary).

The defendant's also request for an evidentiary hearing on his second claim.  However, that request also will be denied because the record is replete with evidence that Segura-Corro was provided with adequate translation services.  In his reply, Segura Corro claims that "[a]n objective review of the record reveals that nothing therein conclusively forecloses [the defendant] from demonstrating that . . . he was in fact unable to communicate with his counsel

during the trial proceedings." [Record No. 196, p. 7]  In making the determination regarding whether to schedule an evidentiary hearing, the Court cannot fully credit Inman's assertions that the defendant received adequate translation.  However, trial records clearly establish that the defendant not only received interpreters, but that the interpreters actively assisted him throughout trial and sentencing proceedings.  The defendant's claims to the contrary are "clearly contradicted by the record," so an evidentiary hearing is unwarranted.  *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013).

## V.  Certificate of Appealability

The Court must issue or deny a certificate of appealability when it enters a final order that is adverse to the movant in a § 2255 proceeding.  Rule 11 of the Rules Governing § 2255 Proceedings for the United States District Courts; 28 U.S.C. § 2253(c)(1)(B).  A certificate of appealability may be issued only when the defendant has "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy this burden, the defendant must show that reasonable jurists could debate whether the petition should have been resolved in a different way or that the issues involved were "adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4) (1983)).

Here, reasonable jurists would not debate the Court's conclusions.  Counsel effectively advised the defendant during the plea negotiation process.  And even if he was not adequately informed of the nature of the government's plea offers, he cannot show that he would have accepted either offers if his attorney had acted differently.  And the court ensured that Segura-Corro could actively participate in his trial by providing him with two interpreters and ample opportunity to communicate with them and with counsel.  Segura-Corro's arguments are

clearly without merit based on the records from his trial and the representations of his attorney. No certificate of appealability will issue as a result.

### VI.  Conclusion

Segura-Corro has failed to demonstrate that his ineffective assistance of counsel claim satisfies the standard set forth in *Strickland* or that he was denied of his right to effectively participate at any stage of this proceeding.  Accordingly, it is hereby

**ORDERED** as follows:

1.      Defendant/Movant Daniel Segura-Corro's motion to vacate, correct, or set aside sentence pursuant to 28 U.S.C. § 2255 [Record No. 186] is **DENIED**.

2.      A Certificate of Appealability shall not issue.

Dated: November 4, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky